## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NIKE, INC., | ) | Case No. 1:08-CV-05840 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NIKE, INC., | ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

### WAL-MART STORES' FIRST AMENDED AFFIRMATIVE DEFENSES

COMES NOW Defendant Wal-Mart Stores, Inc. ("Wal-Mart") and for its First Amended

Affirmative Defenses to Plaintiff Nike, Inc.'s ("Nike") Complaint hereby states as follows:

### AFFIRMATIVE DEFENSES

Further answering Nike's Complaint, and as additional defenses thereto, Wal-Mart

asserts the following affirmative defenses, without assuming the burden of proof when such

burden would otherwise rest with Nike.  Wal-Mart expressly reserves the right to further amend

2

its First Amended Affirmative Defenses as additional information becomes available and/or is otherwise discovered:

### First Affirmative Defense

1.　　Nike fails to state a claim against Wal-Mart upon which relief may be granted.

### Second Affirmative Defense

2.　　Upon information and belief, Wal-Mart states that Nike is wholly or partially barred from the relief that it seeks because the claims of the '914 and/or '248 Design Patents are each invalid for failure to comply with the requirements of the patent laws of the United States, 35 U.S.C. § 100, *et seq.*, including, but not limited to, those set forth in 35 U.S.C. §§ 102, 103, 112 and 171.

### Third Affirmative Defense

3.　　Upon information and belief, on or about August 11, 2004 Nike acquired the Official Starter Properties and Official Starter businesses that owned and licensed the Starter brand of athletic shoes and sports apparel sold to third parties since 2000 including, but not limited to, Wal-Mart.  To develop, design, market, promote, and sell the Starter brand products to its customers including, but not limited to, Wal-Mart, Nike formed a wholly owned subsidiary named Exeter Brands Group LLC ("Exeter").

4.　　Subsequent to the issuance of the '914 and '248 Design Patents, Nike's officers, employees, representatives, and/or agents, fostered and maintained a close relationship with Wal-Mart in order to promote the development, design, and sale of Nike's Starter brand athletic shoes to Wal-Mart.  To facilitate its success in selling Starter brand shoes to Wal-Mart, Nike maintained an office in Bentonville, Arkansas, to be in close proximity to Wal-Mart's headquarters and buyers.  Nike staffed its office with, among others, full-time employees who

were responsible for working with and marketing athletic shoes to Wal-Mart.  On information

and belief, several Nike employees with responsibility for directly working with Wal-Mart

included, among others, Lori Sherba, Christina Rockers and Doug Hurt.  Nike assigned other

employees with specific responsibilities regarding marketing, promoting, selecting, designing,

and selling Nike's Starter athletic shoes to Wal-Mart, including, for example, Clare Hamill,

Skip Lee, Matt Mitchell, Brian Griggs and Andrea Suarez.

5.      As part of Nike's continuous efforts to sell Nike's Starter brand athletic shoes to

Wal-Mart, including subsequent to the issuance of the '914 and '248 Design Patents, Nike's

employees engaged in frequent and regular communications and meetings with Wal-Mart to

review and assess Wal-Mart's current, upcoming, and proposed lines of men's, women's and

children's athletic shoes for the purpose of determining what designs and models of Nike's

Starter brand shoes should be marketed and sold to and by Wal-Mart, and where within the

line-ups Starter shoes should be placed.  In order to successfully market, sell, and position

Nike's Starter brand shoes to Wal-Mart, and in its stores, Nike routinely inspected most, if not

all, of the current, upcoming, and proposed, athletic shoe designs that Wal-Mart considered,

planned, and purchased from other athletic shoe suppliers.  Indeed, Nike routinely inspected,

commented upon, and made recommendations to Wal-Mart regarding, the line up of athletic

shoes Wal-Mart purchased, sold, and intended to purchase and sell – including the DETRA and

DIVA designs that Nike now belatedly accuses of infringement.

6.      Nike's employees and sales representatives attended numerous meetings with

Wal-Mart where Nike compared, contrasted, and promoted its existing and proposed Starter

athletic shoe models to athletic shoes Wal-Mart considered and procured from other suppliers,

including the shoes that Nike now accuses of infringement.  Despite Nike's extensive review,

4

knowledge, and direct participation in Wal-Mart's selection, offering, and sale of athletic shoes, including the shoes it now accuses of infringement, Nike, its officers, employees, and agents, never objected to, disapproved, or in any way opposed Wal-Mart's selection, purchase, distribution, importation, offer for sale, or sale of the shoes it now accuses of infringement.  To the contrary, Nike directly and indirectly encouraged, induced, and assisted Wal-Mart in the selection, promotion, and sale of such shoes.

7.      Despite Nike's ownership and knowledge of the asserted '914 and '248 Design Patents, prior to its sale and divestiture of Exeter, Nike elected not to assert either the '914 or '248 Design Patents against Wal-Mart.

8.      Upon information and belief, Nike owned Exeter until on or about December 17, 2007, at which time Nike sold and divested Exeter.

9.      In view of Nike's actions and conduct, it is wholly or partially barred from the relief that it seeks based upon the principles and doctrine of waiver.

**Fourth Affirmative Defense**

10.     Wal-Mart hereby repeats and incorporates by reference each of its allegations in paragraphs 3 through 9 of its Affirmative Defenses as if fully set forth and restated herein.

11.     Upon information and belief, subsequent to the issuance of the '914 and '248 Design Patents, and before Nike's sale and divestiture of Exeter, Nike employees, officers, representatives, and/or agents, inspected, examined, considered, reviewed, and commented upon the shoe designs that Nike now accuses of infringement in Wal-Mart stores, Wal-Mart merchandising displays, Wal-Mart layout centers, and in Wal-Mart's offices.

12.     Subsequent to the issuance of the '914 and '248 Design Patents and before Nike's sale and divestiture of Exeter, employees, officers, representatives, and/or agents of

5

Exeter and Nike never objected to, disapproved, or in any way opposed Wal-Mart's selection,

purchase, distribution, importation, offer for sale, or sale of the shoes it now accuses of

infringement.  To the contrary, Nike directly and indirectly encouraged, induced, and assisted

Wal-Mart in the selection, promotion, and sale of such shoes.

13.     Nike did not disclose to Wal-Mart, and Wal-Mart had absolutely no knowledge,

that Nike would later, after its divestiture of Exeter, accuse the same shoes of infringement that

it reviewed, commented upon, and directly and indirectly encouraged, induced, and assisted

Wal-Mart in the selection, promotion, placement, and sale of such shoes.

14.     Wal-Mart detrimentally relied upon Nike's assistance in the review, selection,

promotion, placement, offer for sale, sale, and positioning of the accused shoes, as well as

Nike's failure to object to, disapprove, or in any way oppose, Wal-Mart's selection, promotion,

placement, distribution, offer for sale, and sale of the accused shoes.

15.     Wal-Mart detrimentally relied upon Nike's express and implied approval of

Wal-Mart's selection, placement, offer for sale, sale, and/or distribution of the accused shoes.

16.     In view of the foregoing, Wal-Mart states that Nike is wholly or partially barred

from the relief that it seeks based upon the principles and doctrine of equitable estoppel.

**Fifth Affirmative Defense**

17.     Wal-Mart hereby repeats and incorporates by reference each of its allegations in

paragraphs 3 through 16 of its Affirmative Defenses as if fully set forth and restated herein.

18.     Subsequent to the issuance of the '914 and '248 Design Patents, and prior to

Nike's sale and divestiture of Exeter, employees, officers, representatives, and/or agents of

inspected, reviewed, commented upon, and made recommendations to Wal-Mart regarding the

accused shoe designs, and directly and indirectly encouraged, induced, and assisted Wal-Mart
in the selection, promotion, placement, and sale of such shoes.

19.      Subsequent to the issuance of the '914 and '248 Design Patents and before
Nike's sale and divestiture of Exeter, employees, officers, representatives, and/or agents of
Nike were aware: (1) of Nike's rights under and ownership of the '914 and '248 Design
Patents; and (2) that Wal-Mart was considering, selecting, purchasing, offering for sale, selling,
and distributing the shoe designs that Nike now accuses of infringement.

20.      Subsequent to the issuance of the '914 and '248 Design Patents and before
Nike's sale and divestiture of Exeter, employees, officers, representatives, and/or agents of
Exeter and Nike never objected to, disapproved, or in any way opposed Wal-Mart's selection,
purchase, distribution, importation, offer for sale, or sale of the shoes it now accuses of
infringement.  To the contrary, Nike directly and indirectly encouraged, induced, and assisted
Wal-Mart in the selection, promotion, and sale of such shoes.

21.      Nike did not disclose to Wal-Mart, and Wal-Mart had absolutely no knowledge,
that Nike would later, after its divestiture of Exeter, accuse the same shoes of infringement that
it reviewed, commented upon, and directly and indirectly encouraged, induced, and assisted
Wal-Mart in the selection, promotion, placement, and sale of such shoes.

22.      Nike waited more than two years after Wal-Mart first began selling the accused
shoe designs, and more than two years after it first learned of Wal-Mart's potential selection,
offer for sale, distribution, and sale of such shoes, to first accuse Wal-Mart of infringing the two
design patents-in-suit.

23.     Nike elected to delay accusing Wal-Mart of infringement, or in any way objecting to Wal-Mart's selection, offer for sale, sale, and/or distribution of the accused shoe designs, until after Nike divested itself of Exeter.

24.     There was no reason, justification, or excuse for Nike's delay until October 13, 2008, in providing any notice to Wal-Mart of Nike's disapproval of Wal-Mart's selection, offer for sale, sale, and/or distribution of the shoes that Nike has belatedly accused of infringement - more than two years after Nike became aware of the accused shoe designs and after Wal-Mart first began selling the allegedly infringing shoes.

25.     Over the past several years, Wal-Mart has invested considerable time, effort, resources, and money, selecting, purchasing, distributing, offering for sale, and selling the shoe designs that Nike now belatedly accuses of infringement.  Wal-Mart would be unduly prejudiced if Nike – more than two years after learning of the shoe designs that Nike now accuses of infringement – is allowed to assert its alleged rights under the '914 and '248 Design Patents against Wal-Mart.

26.     In view of the foregoing, Wal-Mart states that Nike is wholly or partially barred from the relief that it seeks based upon the principles and doctrine of laches.

**Sixth Affirmative Defense**

27.     Wal-Mart hereby repeats and incorporates by reference each of its allegations in paragraphs 3 through 26 of its Affirmative Defenses as if fully set forth and restated herein.

28.     Subsequent to the issuance of the '914 and '248 Design Patents, and prior to Nike's sale and divestiture of Exeter, employees, officers, representatives, and/or agents of Nike inspected, reviewed, commented upon, and made recommendations to Wal-Mart

8

regarding the accused shoe designs, and directly and indirectly encouraged, induced, and assisted Wal-Mart in the selection, promotion, placement, and sale of such shoes.

29.     Subsequent to the issuance of the '914 and '248 Design Patents and prior to Nike's sale and divestiture of Exeter, employees, officers, representatives, and/or agents of Nike were aware: (1) of Nike's rights under and ownership of the '914 and '248 Design Patents; and (2) that Wal-Mart was considering, selecting, purchasing, offering for sale, selling, and distributing the shoe designs that Nike now accuses of infringement.

30.     Subsequent to the issuance of the '914 and '248 Design Patents and prior to Nike's sale and divestiture of Exeter, employees, officers, representatives, and/or agents of Exeter and Nike never objected to, disapproved, or in any way opposed Wal-Mart's selection, purchase, distribution, importation, offer for sale, or sale of the shoes it now accuses of infringement.  To the contrary, Nike directly and indirectly encouraged, induced, and assisted Wal-Mart in the selection, promotion, and sale of such shoes.

31.     For several years prior to Nike filing of the present lawsuit, in view of Nike's acquiescence and failure to communicate any disapproval of or concerns regarding Wal-Mart's selection, offer for sale, sale, and/or distribution of the shoe designs that Nike has accused of infringement, Wal-Mart justifiably believed that Nike had no objection to and that it had the unfettered right to select, offer for sale, sell, and distribute such shoes without infringing upon any of Nike's alleged intellectual property rights including, but not limited to, the '914 and '248 Design Patents.

32.     Over the past several years, Wal-Mart has invested considerable time, effort, resources, and money, selecting, purchasing, distributing, offering for sale, and selling the shoe designs that Nike now belatedly accuses of infringement.  Wal-Mart would be unduly

prejudiced if Nike – more than two years after learning of the shoe designs that Nike now accuses of infringement – is allowed to assert its alleged rights under the '914 and '248 Design Patents against Wal-Mart.

33.     In view of the foregoing, Wal-Mart states that Nike is wholly or partially barred from the relief that it seeks based upon the principles and doctrine of acquiescence.

### Seventh Affirmative Defense

34.     Upon information and belief, by reason of the proceedings in the U.S. Patent and Trademark Office during the prosecution of the applications that matured into the '914 and/or '248 Design Patents, and in particular, the applicants and/or their representative(s) and/or agent's remarks, representations, concessions, amendments and/or admissions during those proceedings, Nike is precluded and estopped from asserting that Wal-Mart has infringed upon any of the claims of the '914 and/or '248 Design Patents.

### Eighth Affirmative Defense

35.     Upon information and belief, Nike is not entitled to any damages or any other remedy under 35 U.S.C. §§ 284 or 285 with respect to any alleged infringement by Wal-Mart of any of the claims of the '914 and/or '248 Design Patents to the extent that Nike and/or any predecessor owners and/or licensees of the '914 and/or '248 Design Patents have not complied with the notice and/or marking requirements of 35 U.S.C. § 287.

### Ninth Affirmative Defense

36.     Wal-Mart has not made, used, imported, offered for sale or sold in the United States, and is not making, using, importing, offering for sale, or selling any product or method which would infringe any valid and/or enforceable claim of either the '914 and/or '248 Design Patents.

**Tenth Affirmative Defense**

37.     Upon information and belief, Wal-Mart states that Nike is wholly or partially barred from the relief that it seeks because the '914 and/or '248 Design Patents are invalid as to each of the claims thereof for failure to comply with the requirements of the patent laws of the United States, 35 U.S.C. § 100 *et seq*., for one or more of the following reasons, as well as others hereinafter set forth or which Wal-Mart may hereafter discover or otherwise become informed:

(a)     The alleged inventive designs in the '914 and/or '248 Design Patents were not new before the applicant's alleged conception and/or reduction to practice of the same;

(b)     The alleged inventive designs were known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the designs claimed in the '914 and/or '248 Design Patents were allegedly invented;

(c)     The alleged inventive designs in the '914 and/or '248 Design Patents were patented or described in a printed publication in this or a foreign country, or were in public use, on sale or sold in this country, more than one year prior to the date of the applications for the '914 and/or '248 Design Patents in the United States;

(d)     The alleged inventive designs in the '914 and/or '248 Design Patents were described in a patent granted on an application for patent filed by another in the United States before the alleged inventions by the applicant for the '914 and/or '248 Design Patents;

(e)     The alleged inventive designs in the '914 and/or '248 Design Patents were described in a published patent application, which application was filed by another in the United States (or filed under the treaty defined in 35 U.S.C. § 351(a)) before the alleged inventions by the applicant for the '914 and/or '248 Design Patents;

(f)     The patentees did not themselves invent the subject matter claimed;

(g)     The patentees abandoned the alleged inventions;

(h)     Before the alleged inventive designs were made by the patentees, said alleged inventive designs were made in this country by others who had not abandoned, suppressed or concealed the same;

(i)     The difference between the subject matter sought to be patented in the '914 and/or '248 Design Patents and the prior art are such that the subject matter as a whole would have been obvious at the time the alleged inventions were made to a person having ordinary skill in the art to which said subject matter pertains;

(j)     The alleged inventive designs do not involve the exercise of inventive faculty, but only the judgment, knowledge and skill possessed by persons having ordinary skill in the art at the time of the alleged inventions thereof by the patentee(s);

(k)     The asserted claims do not particularly point out and distinctly claim the subject matter which the applicants and/or patentees regard as their inventions; and

(l)     The alleged inventive designs do not qualify as patentable subject matter under 35 U.S.C. § 171, insofar as the claimed designs are functional and not ornamental.

**Eleventh Affirmative Defense**

38.     Wal-Mart states that it has not contributed to the infringement of, and/or induced the infringement of, any valid and/or enforceable claim of the '914 and/or '248 Design Patents.

**Twelfth Affirmative Defense**

39.     Upon information and belief, Wal-Mart states that, by reason of prosecution history estoppel, Nike is barred from asserting a claim construction that would cause any of the

claims of the '914 and/or '248 Design Patents to be infringed by any products or methods made, used, offered for sale, or sold by Wal-Mart.

### Thirteenth Affirmative Defense

40.     Wal-Mart denies that Nike is entitled to any of the relief requested against Wal-Mart.

### Fourteenth Affirmative Defense

41.     Any claims of the '914 and/or '248 Design Patents that may not be, *arguendo*, held invalid and/or unenforceable are so restricted in scope that Wal-Mart has not infringed, and does not infringe, upon any such claims.

### Fifteenth Affirmative Defense

42.     Upon information and belief, Wal-Mart states that Nike is wholly or partially barred from the relief that it seeks because Nike, and/or certain of its subsidiaries, affiliates, divisions, licensees, representatives, related companies, and/or agents, granted an express and/or implied license in and to the '914 and/or '248 Design Patents to Wal-Mart.

WHEREFORE, Wal-Mart  denies that Nike is entitled to any relief as prayed for in the Complaint or otherwise and, accordingly, respectfully prays for entry of judgment:

A.     Dismissing Nike's Complaint against Wal-Mart, with prejudice;

B.     Finding that Wal-Mart has not infringed and is not infringing upon any of the claims of the '914 and/or '248 Design Patents;

C.     Finding that each claim of the '914 and/or '248 Design Patents is invalid and/or unenforceable;

D.     Finding that Nike's claims are barred or invalid, in whole or in part, based upon one or more of the affirmative defenses set forth herein;

E.      Enjoining Nike and/or any of its respective officers, directors, agents, servants, employees, and attorneys, and all persons in active concert or participation with any of them, from directly or indirectly asserting infringement against, or instituting any further action for infringement of the '914 and/or '248 Design Patents against Wal-Mart, or any of its customers, agents, successors and assigns;

F.      Finding that this case is exceptional pursuant to 35 U.S.C. § 285 and awarding Wal-Mart its reasonable attorneys' fees, expenses and costs incurred in connection with this action; and

G.      Awarding to Wal-Mart such other and further relief as the Court may deem just and proper under the circumstances.

## **Additional Statement**

Wal-Mart states that it filed its Answer and Affirmative Defenses on December 16, 2008 to the original Complaint filed by Nike, and that it filed a Counterclaim on March 13, 2009 to the original Complaint filed by Nike, and that both its Answer and its Counterclaim remain pending and are hereby incorporated by reference in their entireties.

14

Date:   June 5, 2009

                 /s/ James B. Surber/
                 David A. Roodman
                 Mark A. Paskar
                 James B. Surber
                 BRYAN CAVE LLP
                 211 N. Broadway, Suite 3600
                 St. Louis, MO 63102
                 Telephone: (314) 259-2000
                 Facsimile: (314) 259-2020
                 E-mail:
                           daroodman@bryancave.com
                           mapaskar@bryancave.com
                           jbsurber@bryancave.com

                 Walter Jones, Jr.
                 Jonathan Cifonelli
                 Pugh, Jones, Johnson & Quandt, P.C.
                 180 North LaSalle Street
                 Suite 3400
                 Chicago, IL 60601
                 Telephone: (312) 768-7800
                 Facsimile: (312) 768-7801
                 E-mail:   wjones@pjjq.com
                         jcifonelli@pjjq.com

                 **ATTORNEYS FOR DEFENDANT**
                 **WAL-MART STORES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by the Court's

electronic service system on this 5th day of June 2009 to:

Christopher J. Renk
Erik S. Maurer
Banner & Witcoff, Ltd.
10 S. Wacker Drive – Suite 3000
Chicago, Illinois 60606

*Attorneys for Plaintiff Nike, Inc.*


/s/ James B. Surber/